804 So.2d 719 (2001)
STATE of Louisiana, Appellee,
v.
Kevin Jerome KENDRICK and Tori Veronique Agers, Appellants.
No. 35,233-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2001.
Rehearing Denied January 17, 2002.
*720 Richard J. Gallot, Jr., Ruston, LA, Counsel for Appellants.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, Stephen K. Hearn, Jr., Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, Judge.
This is an appeal from the trial court's denial of Defendants', Kevin Jerome Kendrick and Tori Veronique Agers, motions to suppress evidence (crack cocaine) seized as a result of a search of the vehicle driven by Ms. Agers and in which Mr. Kendrick was a passenger. Defendants entered Crosby[1] pleas to possession of cocaine, with the intent to distribute, reserving the right to appeal the denial of their motions to suppress. Mr. Kendrick was sentenced to 15 years at hard labor, with 10 years suspended and the remaining 5 years without benefit of probation, parole or suspension of sentence. Ms. Agers was sentenced to 4½ years at hard labor, which was suspended; and she was placed on 5 years supervised probation and ordered to pay a $1,500 fine and to serve 6 months in the parish jail. Defendants now appeal the denial of the motions to suppress. For the reasons stated herein, Defendants' convictions and sentences are affirmed.

FACTS
On April 20, 1999, State Trooper J.C. Jordan was on duty in the median of I-20 west of Grambling in Lincoln Parish. That portion of the interstate was, at the time, a construction zone with a posted speed limit of 45 miles per hour. At approximately 3:59 p.m., Trooper Jordan noticed a small red car with two passengers traveling eastbound at what appeared to him to be an excessive speed. His radar gun clocked the vehicle to be traveling at 53 miles per hour. Trooper Jordan pulled the vehicle over and identified the driver as Tori Veronique Agers and the passenger as Kevin Jerome Kendrick. The vehicle was a rental from Alamo Car Rental ("Alamo") and the paperwork given to Trooper Jordan by Ms. Agers showed that the vehicle had been rented in Dallas, Texas, by a Latrece Fuller from Oklahoma, who was not in the vehicle. In addition, the rental vehicle was about seven days overdue on the lease.
*721 Ms. Agers explained to Trooper Jordan that Ms. Fuller was a friend of hers who had rented the vehicle for her because she did not have a credit card. Ms. Agers further explained that she had gotten approval from Alamo to keep the vehicle the extra days. She advised that Mr. Kendrick was her boyfriend and she was taking him to school and to pick up his car, which was broken down in Ruston. Trooper Jordan ran a criminal check on Defendants and found that they both had prior arrests for theft. He also had troop headquarters contact Alamo to determine if Ms. Agers could keep the rental car or if it needed to be impounded.
As Trooper Jordan was waiting for a response from Alamo, he gave Ms. Agers' license and papers back without a speeding ticket and asked her to pay more attention to the speed limit. He told her she was free to go, pending word from Alamo. Although Trooper Jordan had not written her a speeding ticket at that time, he testified that he believed the two were "under investigation" while waiting to hear back from Alamo.
Trooper Jordan also testified that, as he handed her the papers, he noticed that Ms. Agers was becoming very nervous, the pulse in her neck was rapid and her hands were shaking. He also noticed other problems with the story told to him by Ms. Agers about the couple's plans. Trooper Jordan testified that there was no clothing nor personal items in the vehicle, although Mr. Kendrick told him he was moving to start school at Grambling. Interestingly, Mr. Kendrick was 33 years old at the time and told Trooper Jordan he was trying out for an athletic scholarship for basketball.
Based on his observations, coupled with the late rental of the vehicle, Trooper Jordan decided to ask Ms. Agers for her consent to search the vehicle and presented her with a consent to search form. According to Trooper Jordan's testimony, Ms. Agers told him she did not really want to sign anything. After she told Trooper Jordan that she did not want to sign, he marked "refused" on her signature line on the consent form. He then told her that she did not have to sign the form, that he was not forcing her to and that, if she wanted to give verbal consent, that was fine, she didn't have to sign any papers. Trooper Jordan further testified as follows:
Q: Okay. And what was [Ms. Agers'] response to your request for consent to search the vehicle?
A: We do a written consent and I showed her the written consent. I filled out all the information. I like to have it in writing. It was strictly voluntary and that I would like to search the vehicle and she said that she refused a written consent, said that she didn't want to really sign anything. She looked at it and Trooper Neal was there at the time and she turned around looked at (sic) car, she looked at the consent list, she looked at me and she said, just go ahead and look.
In the meantime, a second trooper, Trooper J.C. Neal, had arrived at the scene. After the above exchange, Trooper Neal asked Mr. Kendrick to exit the vehicle and Trooper Jordan asked Ms. Agers to step aside and a search of the vehicle was conducted. Underneath the spare tire was found approximately two pounds of rocks of crack cocaine. Mr. Kendrick and Ms. Agers were arrested for possession of cocaine, with the intent to distribute. At the time of the arrest, Trooper Jordan read the Miranda rights form to Defendants.
About 20 minutes after Defendants were arrested, the arresting troopers were advised *722 by their headquarters that Alamo wanted the vehicle impounded.
At the hearing on the motions to suppress, Trooper Jordan was asked if Ms. Agers and Mr. Kendrick were free to go when he handed back her papers without a speeding ticket. Trooper Jordan testified that they were, but:
I would have told her at that point I felt like there was some criminal activity and I would have asked her for her consent and if she would have refused I would have handled it appropriately orBut I would have told her that I felt like I needed to search the vehicle.
He acknowledged that, at that time, the two were under investigation.
Trooper Neal testified that, when he arrived at the scene, Trooper Jordan was standing at the front of his patrol car with Ms. Agers attempting to get her consent to search the vehicle. As Trooper Neal approached them, he saw Ms. Agers hand the consent form back to Trooper Jordan. Regarding her subsequent verbal consent to search, Trooper Neal testified that Ms. Agers told Trooper Jordan "that [Ms. Agers] did not want to sign the form," but he further testified that she "had told him he could look in the car and she refused to sign, but said he could look in the car."
Ms. Agers also testified at the motion to suppress. She testified that Trooper Jordan presented her with a copy of the consent to search form, that she read it and that she refused to sign it. She further testified as follows:
A: As I was reading the form or looking over it he was saying that I had tohad the right to either sign it or he could search anyway. I didn't sign it.
Q. And as a result of his statement, what did you do?
A. I said, go ahead, fine.
Trooper Jordan specifically refuted this assertion by Ms. Agers, stating, "I didn't tell her that I was going to search it regardless. I told her that she did not have to sign the form [and] that I could search it on a verbal agreement."
The trial court ruled that there was probable cause for the initial traffic stop and that the circumstances, particularly the expired rental agreement, aroused the troopers' suspicions. Further, the trial court was persuaded by Trooper Jordan's consistent testimony that Ms. Agers consented. Finally, even if the search had not been authorized by Ms. Agers' consent, the trial court noted that the vehicle would have been impounded at Alamo's request and the cocaine discovered in an inventory search. The trial court denied the motions to suppress.
Thereafter, the trial court accepted Crosby pleas from Defendants. As previously stated, Mr. Kendrick was sentenced to 15 years at hard labor, with 10 years suspended and 5 years without benefit. Ms. Agers was sentenced to a term of 4½ years at hard labor, which was suspended, and she was placed on 5 years probation and ordered to pay a $1,500 fine and to serve 6 months in the parish jail.
Initially on appeal, this court noted an error patent in the bill of information, incorrectly citing the possession of over 400 grams of cocaine as a violation of La. R.S. 40:967(B), instead of La. R.S. 40:967(A). The sentences were vacated and the case remanded.
On February 15, 2001, the State filed an amended bill of information; and, on the same day, Defendants entered new Crosby guilty pleas. They were sentenced to the same terms of the original sentences and this appeal followed.

*723 DISCUSSION

Defendants argue that Ms. Agers' statement of "go ahead, fine" was not consent, but was in response to Trooper Jordan's telling her he was going to search the vehicle with or without her consent. The State, however, maintains that Ms. Agers provided a valid verbal consent to the search of the vehicle. Alternatively, the State argues that, even if the search was unconstitutional, the evidence would still be admissible under the inevitable discovery doctrine because the vehicle would have been impounded and an inventory search would have been conducted revealing the cocaine.
La. Const. art. 1 sec. 5 provides:
Section 5. Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
There is no dispute that the evidence at issue, approximately two pounds of rock crack cocaine, was discovered as the result of a warrantless search of the rental car driven by Ms. Agers. It is well settled that a warrantless search conducted pursuant to a valid consent is permitted by the Louisiana and United States Constitutions. State v. Raheem, 464 So.2d 293 (La.1985); State v. Crews, 28,153 (La. App.2d Cir.5/8/96), 674 So.2d 1082. Oral consent to a search is valid. Crews, supra. A consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Bodley, 394 So.2d 584 (La.1981); State v. Owens, 480 So.2d 826 (La.App. 2d Cir.1985), writ denied, 486 So.2d 748, cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986).
While a valid consent search is a recognized exception to the warrant requirement, the burden is on the state to prove that the consent was given freely and voluntarily. Necessarily, voluntariness is a question of fact to be determined by the trial court under the facts and circumstances of each case, which determination is to be given great weight upon appeal because of that court's opportunity to observe witnesses and assess credibility. State v. Edwards, 434 So.2d 395 (La.1983); State v. Paggett, 28,843 (La.App. 2d Cir.12/11/96), 684 So.2d 1072.
Since Ms. Agers refused the consent form in the only manner provided (i.e., not signing it), it appears that she initially had refused to consent to the search of the rental car. The next inquiry, therefore, is whether the statements by Ms. Agers following her refusal to sign constitute a valid oral consent to search. The trial court held that the State had met its burden of proving that her statements constituted the granting of voluntary consent for the troopers to search the vehicle. The trial court was in a position to see, hear and evaluate the credibility of both troopers and Ms. Agers while testifying at the hearing on the motions to suppress. Both Troopers Jordan and Neal provided consistent testimony that, while she declined to sign the consent form, Ms. Agers verbally consented to the search of the vehicle. Faced with conflicting testimony on this point, the trial court made a credibility determination in favor of the troopers. We afford great weight and deference to *724 the conclusions of the trial court and find no error in its conclusion that the statements of Ms. Agers constituted voluntary authorization or consent to search the vehicle.
Alternatively, the State argues that, even if Ms. Agers did not validly consent to the search, the evidence would still have been admissible because the rented vehicle was impounded at the request of Alamo and an inventory search incidental to the impoundment would have discovered the two pounds of crack cocaine in the vehicle's trunk. In light of our conclusion that the trial court properly denied the motion to suppress, we need not address this argument.
Assuming, arguendo, however, that the evidence was seized in violation of the Fourth Amendment, we agree with the State that the inevitable discovery doctrine would operate to render the evidence admissible. The testimony shows that, at the time of the stop, it appeared to Trooper Jordan that Ms. Agers no longer had any lawful or contractual authority to drive the rental car and he had headquarters contact Alamo to verify if she had any authority to drive the vehicle. He further testified that 20 minutes after Defendants were arrested, headquarters advised him that Alamo requested that the vehicle be impounded.
[W]hen, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible.
State v. Drake, 31,528 (La.App. 2d Cir.1/20/99), 733 So.2d 33, writ denied, 99-1060 (La.9/24/99), 747 So.2d 1117. From the evidence, it appears that, whether or not Ms. Agers consented to the vehicle being searched, it was to be shortly thereafter impounded and searched incidental to that impoundment.

CONCLUSION
For the reasons stated herein, the convictions and sentences of Defendants Kevin Jerome Kendrick and Tori Veronique Agers are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before WILLIAMS, GASKINS, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing denied.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).