885 So.2d 625 (2004)
STATE of Louisiana
v.
Tenna J. BENOIT, Jr.
No. 04-KA-436.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 2004.
*627 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, LA, Terry M. Boudreaux, Appellate Counsel, Andrea F. Long, Counsel of Record on Appeal, Ralph C. Cox, III, James W. Adair, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and THOMAS F. DALEY.
JAMES L. CANNELLA, Judge.
The Defendant, Tenna J. Benoit, appeals from his conviction of third offense driving while intoxicated (DWI). We affirm the conviction and remand.
On March 6, 2001, the Defendant was charged with third offense DWI, a violation of La.R.S. 14:98, R.S. 14:98 D. He pled not guilty at arraignment on April 3, 2001. On June 18, 2001, the trial judge denied his motion to suppress the evidence. The Defendant then filed a writ application with this Court from the denial of the motion to suppress the evidence. We granted the writ, reversed the conviction, and remanded. See: State v. Benoit, 01-810 (La.App. 5th Cir.8/21/01). The Louisiana Supreme Court reversed that ruling, reinstated the trial judge's denial of the Defendant's motion, and remanded the matter to the trial court for further proceedings. See: State v. Benoit, 01-2712 (La.5/14/02), 817 So.2d 11.
On February 24, 2003, the case was tried before a six-person jury which found the Defendant guilty as charged. The Defendant filed a motion for new trial which was denied on February 26, 2003. On April 23, 2003, the trial judge sentenced the Defendant to imprisonment at hard labor for three years and suspended all but thirty days.[1] Next, the Defendant's motion for appeal was granted.
According to Jefferson Parish Sheriff's Office Deputy Russell J. Blanchard, III, on October 12, 2000 he was stopped in the center lane for a red light at Ames Boulevard. While waiting for the light to *628 change, he observed that the driver of a white Ford pickup truck in the right lane was not wearing his seatbelt. Deputy Blanchard motioned several times to the driver, later identified as the Defendant, to put on his seatbelt. The Defendant looked at the Deputy and waved, and then proceeded through the intersection when the light turned green.
Deputy Blanchard followed the vehicle. When he saw that the Defendant made no attempt to put on his seatbelt, he stopped the Defendant and instructed him to exit the vehicle. The Defendant slowly exited the vehicle. The deputy observed that the Defendant was unsteady on his feet and had to grab onto his truck because he lost his balance. When the deputy got near the Defendant, he detected the smell of alcohol on his breath. Also, he also noticed that the Defendant's speech was slurred when he spoke.
Based on these observations, Deputy Blanchard asked the Defendant if he had been drinking any type of alcoholic beverage that night. The Defendant told him that he had just left a friend's house where he had consumed approximately three 12-ounce beers. The deputy asked the Defendant to submit to three standardized field sobriety tests: the horizontal gaze nystagmus (HGN) test, the walk and turn test, and the one-leg stand test. The Defendant agreed. The deputy also asked the Defendant if he had any physical defects and the Defendant said only that he had asthma.
Deputy Blanchard first administered the HGN test, explaining that if a person was under the influence of alcohol or certain types of narcotics, the person's eyes had a tendency to jerk involuntarily, and that there were six points of intoxication or impairment that he had been trained to observe in administering the test. The deputy testified that both of the Defendant's eyes jerked and that all six criteria for intoxication were present.
Deputy Blanchard next conducted the walk and turn test, which consisted of requiring the person to put his left foot on a solid white line on the road, raise his right foot and put it in front of his left foot, touch his heel to his toe, all the time keeping his hands to his side. After nine steps, the subject of the test is told to take a small pivot step and go back the same way, counting as he moves. The deputy stated that the Defendant was unable to keep his stance, kept moving off the line, lost his balance while turning, used his arms for balance, could not keep his arms to his side, took eleven steps instead of nine after the pivot step, and did not touch heel to toe.
The third test administered by Deputy Blanchard was the one-leg stand, which he explained requires the subject to raise a leg approximately six to eight inches off the ground and to count out loud from 1001 up to 1030, while keeping his hands to his side. If the subject drops his foot at any time, he is instructed to start at the next highest number. The deputy testified that the Defendant was unable to count as he was instructed, that he hopped, used his arms for balance, and swayed before starting the test. At that point, the deputy placed the Defendant under arrest, advised him of his Miranda[2] rights, secured his vehicle at his request, and transported him to the Jefferson Parish Correctional Center where he again advised the Defendant of his Miranda rights. He also advised the Defendant of his rights relating to chemical tests for intoxication and the penalties for refusing to submit to the test, and for taking the *629 test and failing it. The Defendant refused to submit to the Intoxilyzer 5000 breath test.
Deputy Blanchard testified that he had received an award one year for outstanding performance on the night watch, and that he was told he wrote more DWIs tickets than anyone else in the unit.
Paula Benoit, the Defendant's mother, testified that on October 12, 2000, the Defendant ate breakfast and then went to work at Buddy's Auto Parts which was located near her house, approximately one mile away. Mrs. Benoit explained that the Defendant had to be at work for 8:00 a.m., so he left home at approximately 7:50 a.m. On that same date, the Defendant came home for lunch at approximately 11:45 a.m. She did not see the Defendant drink any alcoholic beverages either before 8:00 a.m. or at lunchtime.
At home that evening, the Defendant ate dinner at approximately 5:10 p.m., after he got off work. According to Mrs. Benoit, the Defendant did not have any alcoholic beverage to drink with dinner. He then left between 5:45 and 6:00 p.m. to visit his friend Landry "Tookie" Borne. She did not see the Defendant again that evening.
Terry Beasley (Beasley), testified that he was a mechanic and worked at Buddy's Auto Repair, a business owned by his father and brother. Beasley explained that the Defendant worked for them as a mechanic and that, on the day in question, he and the Defendant started work at 8:00 a.m., broke for lunch at approximately noon, and the Defendant worked from approximately 1:00 p.m. to 5:00 p.m. Beasley did not see the Defendant consume any alcoholic beverages between 8:00 a.m. and 5:00 p.m. He later met the Defendant at 6:15 or 6:30 p.m. at a local daiquiri shop. When Beasley arrived at the daiquiri shop, the Defendant and Borne were already there. The three men stayed for approximately an hour and a half until approximately 8:00 p.m. Beasley stated that when he arrived, the Defendant was drinking a beer. Beasley did not see the Defendant have any other drinks other than the beer. After the men left the daiquiri shop, Beasley drove to his house to drop off his car and joined the Defendant and Borne in the Defendant's car. The Defendant was driving.
Next, the Defendant, Beasley and Borne went to Steve Plaisance's (Plaisance) house where they stayed from approximately 8:00 to 10:00 p.m. Beasley did not see the Defendant drink anything there. Plaisance then asked the Defendant to give him a ride to a bar, the Canal Bank Inn, to pick up his girlfriend. The Defendant and Plaisance left at approximately 10:00 p.m., and Beasley did not see the Defendant after that time. The testimony of Borne and Plaisance largely corroborated that of Beasley.
Additionally, Borne testified that he was the first one to arrive at the daiquiri shop, that he purchased one beer for the Defendant after the Defendant arrived, that he did not purchase any other beers for the Defendant, and that he did not see the Defendant buy any beers on his own or anyone else buy beer for him. Borne also explained that he spilled a beer on the middle of the seat in the Defendant's truck between the time they left the daiquiri shop and the time they picked up Beasley from his house, and that the truck smelled of beer. However, Borne also stated that he fell asleep at Plaisance's house for approximately twenty minutes and that the Defendant could have had more beer to drink during that time.
Plaisance did not see the Defendant consume any alcohol at his house. He explained that he and the Defendant left his house at approximately 10:00 p.m. to pick *630 up his girlfriend at the Canal Bank Inn. The Defendant did not drink any beer on the way. When they arrived, the Defendant went inside the bar and came back out immediately with Plaisance's girlfriend. According to Plaisance, the Defendant did not have time to have a drink in the bar because he was only in there for approximately one minute. Plaisance then drove his girlfriend's car home. He did not see the Defendant after he left the bar.
The State offered a stipulation that the Defendant was the same individual who pled guilty to DWI in Second Parish Court on June 18, 1998 and in First Parish Court on September 23, 1998. The Defendant agreed to the stipulation and the trial judge admitted State's Exhibits 4 and 5, certified copies of the Defendant's two DWI convictions. Then, the State introduced testimonial evidence relating to the stipulated offenses.
Louisiana State Trooper Daryl Thomas testified that, on July 20, 1997, he was dispatched to the scene of an accident involving injuries on U.S. 90 westbound at Lapalco Boulevard. Trooper Thomas arrested the Defendant on that date for DWI and for being involved in an accident in which he was at fault. He identified State's Exhibit 1B as the fingerprint card pertaining to that arrest. He testified that the Defendant submitted to a breath test and that the results were .216. Louisiana State Trooper Scotty Lewis testified that, on February 21, 1998, he arrested the Defendant for DWI. When he asked the Defendant to submit to a field sobriety test and a breath test, the Defendant refused, stating that his attorney told him not to submit to the test. Trooper Lewis identified State's Exhibit 2B as the fingerprint card relating to that arrest.
On appeal, the Defendant asserts that the trial judge erred in denying his motion for new trial and that the evidence was insufficient to support the conviction.

SUFFICIENCY OF THE EVIDENCE
When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the appellate court first determines the sufficiency of the evidence. State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55, citing State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Woodhead, 03-1036, p. 6 (La.App. 5th Cir.1/27/04), 866 So.2d 995, 999.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Johnson, 01-1362, pp. 7-8 (La.App. 5th Cir.5/30/02), 820 So.2d 604, 608, writ denied, 02-2200 (La.3/14/03), 839 So.2d 32. When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Cazenave, 00-183, p. 14 (La.App. 5th Cir.10/31/00), 772 So.2d 854, 860, writ denied, 00-3297 (La.10/26/01), 799 So.2d 1151. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. Id.; State v. Marcantel, 00-1629 at 9, 815 So.2d at 56.
In cases involving circumstantial evidence, La.R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." In State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d *631 78, 83, the Louisiana Supreme Court stated:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a the Defendant could afford an exculpatory explanation of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt....
(Citations omitted; emphasis in the original).
The Defendant argues that the evidence was legally insufficient to sustain the conviction for third offense DWI. He does not dispute that he was operating the vehicle or that he had two prior DWI convictions. Rather, he contends that the State failed to prove beyond a reasonable doubt that he was intoxicated, noting that the only evidence presented regarding this issue was Trooper Blanchard's subjective interpretations of his performance on the field sobriety test. The Defendant points out that his driving was not impaired, that his behavior when he exited the vehicle could have been attributed to nervousness, that the alcoholic odor could have been attributed to the beer spilled in his truck, and that his family and friends did not see him drink more than one beer, even though they were with him during the entire day. He contends that the interpretation of the results of the field sobriety test could be explained by the fact that Trooper Blanchard was the DWI record holder in Jefferson Parish.
Intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330, 1334 (La.1983). The behavioral manifestations sufficient to support a charge of DWI must be determined on a case-by-case basis. Some behavioral manifestations, independent of any scientific tests such as blood or breath alcohol tests, are sufficient to support a charge of DWI. State v. Berkeley, 00-1900, p. 6 (La.App. 5th Cir.5/31/01), 788 So.2d 647, 652, writ denied, 01-1659 (La.4/26/02), 814 So.2d 549. The observations of an arresting officer may be sufficient to establish guilt. Allen, 440 So.2d at 1334.
The Defendant introduced evidence to show that Deputy Blanchard was mistaken in his subjective observations of him during the field sobriety test, that there was no breath test, that none of the Defendant's family or friends saw the Defendant drink more than one beer that day, and that the alcoholic odor came from the spilled beer in the Defendant's truck and not from the Defendant's breath. However, the jury chose to believe that he was intoxicated based on the deputy's observations of the Defendant's appearance, the alcoholic odor emanating from him, and the Defendant's failure to perform the various field tests successfully.
The jury made credibility determinations and this Court cannot assess credibility nor reweigh the evidence on appeal. Cazenave, 00-183 at p. 14, 772 So.2d at 860; Marcantel, 00-1629 at p. 9, 815 So.2d at 56. After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and could exclude the hypothesis that the Defendant was not intoxicated. Thus, we find that the evidence was sufficient to convict the Defendant of DWI.

DENIAL OF MOTION FOR NEW TRIAL
The Defendant next asserts that the trial judge erred in denying his motion *632 for new trial and for mistrial. He contends that the trial judge erred in allowing the State to introduce testimony by two State Troopers who related details of the two prior DWI convictions. The Defendant argues that the parties stipulated that the Defendant had two prior DWI convictions and that the introduction of the details of those convictions was irrelevant and prejudicial. He asserts that, because the evidence was insufficient to support the conviction, the conviction could only be attributed to the erroneous admission of the evidence in question.
LSA-C.Cr.P. art. 851(2) provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
....
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error[.]
The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only where there is a clear showing of abuse of that discretion. State v. Badeaux, 01-618, p. 6 (La.App. 5th Cir.11/27/01), 802 So.2d 905, 908, writ denied, 01-3403 (La.10/4/02), 826 So.2d 1121.
Defendant argues that his motion for mistrial should have been granted pursuant to La.C.Cr.P. art. 771, which reads as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
A mistrial is a dramatic remedy and, except in instances in which the mistrial is mandatory, a mistrial is warranted only when the trial error results in substantial prejudice to the defendant, depriving him of a fair trial. State v. Eskano, 00-101, p. 14 (La.App. 5th Cir.1/30/01), 779 So.2d 148, 155.
In this case, on the morning of trial, the State offered a stipulation to the defense that the Defendant was the same individual who pled guilty to DWI in Second Parish Court on June 18, 1998 and in First Parish Court on September 23, 1998. The Defendant accepted this stipulation. However, the State proceeded to call Trooper Thomas to testify regarding the first of the Defendant's two prior DWI convictions. The Defendant objected on the basis that two prior DWIs were stipulated to by the parties and that the evidence was more prejudicial than probative and almost tantamount *633 to Prieur[3] evidence. The Defendant objected to any testimony as to those convictions and to the documents that he anticipated the State would use.
The State responded that, even though it had accepted the stipulation,[4] it could still call witnesses regarding the prior DWI convictions. The State argued that with the stipulation, it would not need to call a fingerprint expert to print the Defendant in court and then to render his expert opinion that the Defendant was the same person who had been previously convicted. It indicated that this was not a Prieur situation, because an element of third offense DWI was that the Defendant had two prior DWI convictions. The State also told the trial court that it was not planning to ask either officer any details about the offenses.
The trial judge overruled the objection with respect to the witnesses. He stated that the Defendant could not stipulate to an element of the crime. He sustained the objection with respect to photographs of the Defendant relating to the prior convictions.
On the stand, Trooper Thomas testified to the first DWI, stating that he was dispatched to the scene of an accident involving injuries. The Defendant objected on the basis that he had already stipulated to the conviction, and that the officer was getting into facts. The trial judge overruled the objection. The Trooper also stated he asked the Defendant to submit to some field sobriety tests. The Defendant objected, stating that the trooper was testifying to fact details about the prior case. The State responded that the testimony was relevant, because the Defendant could argue that he pled guilty to that DWI charge, but did not have a reason to enter the plea. The trial judge sustained the objection. The Defendant then moved for a mistrial "because of the reference to criminal elements" which was denied. The State then asked the trooper the results of the breath test, which was .216. The trial judge overruled the Defendant's objection to the question.
The State next called Trooper Lewis as a witness. When the State asked the witness whether he had asked the Defendant to submit to a breath test, defense counsel objected, and the trial court overruled it. The trooper stated that the Defendant refused the test, claiming that his attorney told him to refuse it. The Defendant argued that this testimony unfairly inferred that he did not take the test because he was drunk.
In connection with the stipulation, the trial court admitted certified copies of the Defendant's two DWI convictions, without objection.
At the hearing for the new trial, the Defendant argued that, if the State wanted to show pattern, motive, intent, or habit, it was required to file a Prieur motion. Otherwise, there was no rational basis for the testimony, but to "tarnish him in front of the jury."
The State responded that the stipulation did not preclude it from introducing evidence of the two prior convictions. It argued that the officers did not go into great detail regarding the two prior convictions and that the details regarding the prior breath test was pertinent because, during opening statement, the defense pointed out that in this case, the State did not have a breath test. The State maintained *634 that a Prieur hearing was not necessary because the two prior convictions were elements of the offense.
The trial judge agreed with the State and denied the Defendant's motion for a new trial. The trial judge noted that he did not allow the State to go into much detail regarding the two previous DWIs, and that at least once, he had sustained one of the Defendant's objections. The trial judge said that he felt that the extent to which the State attempted to show a few details of the prior convictions was relevant because of the defense that it anticipated.
In State v. Taylor, 01-1638, p. 16 (La.1/14/03), 838 So.2d 729, 744-745, cert. denied, ___ U.S. ___, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004), the Louisiana Supreme Court discussed the law regarding stipulations in pertinent part (footnote added):
Moreover, defendant cannot control the state's method of proof. In a criminal prosecution, the state has the burden of proving each element of the crime beyond a reasonable doubt. A defendant may not exclude from the jury's consideration relevant evidence concerning a crime merely by offering to stipulate. Old Chief,[5] 519 U.S. at 186-87, 117 S.Ct. at 653 (A "familiar standard rule" in the criminal law is that "the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the government chooses to present it.")....
The Louisiana Supreme Court has held that "`[t]he State cannot be robbed of the moral force of its case merely because the stipulation is offered.'" State v. Ball, 99-428, p. 10 (La.11/30/99), 756 So.2d 275, 280 (quoting State v. Watson, 449 So.2d 1321, 1326 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985) (citing State v. Harvey, 358 So.2d 1224 (La.1978))). In Taylor, the issue involved the defense's stipulation to second degree murder in a first degree murder prosecution. In Ball, the defendant was charged with possession of a firearm by a convicted felon. There the court allowed the evidence of the specific prior felony, stating: "Proof of a prior specifically enumerated felony conviction is an essential element under La. R.S. 14:95.1." Ball, 99-428 at 10, 756 So.2d at 281.
All relevant evidence is admissible, except where limited by law. La.C.E. art. 402. Relevant evidence is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than without the evidence. La.C.E. art. 401. Although relevant, evidence may nonetheless be excluded, if the probative value is substantially outweighed by its prejudicial effect. La.C.E. art. 403. A trial judge's determination regarding the relevancy and admissibility of evidence will not be overturned on appeal absent a clear abuse of discretion. State v. Sandoval, 02-230, p. 11 (La.App. 5th Cir.2/25/03), 841 So.2d 977, 985, writ denied, 03-853 (La.10/3/03), 855 So.2d 308.
We have not found cases considering this issue in the context of multiple DWI convictions. However, an essential element of the crime of DWI, third offense, is that the Defendant has two *635 prior convictions for driving while intoxicated. Although the cases are not specifically on point, the analyses of Taylor and Ball are pertinent in this case. The State cannot be deprived of its right to prove its case by its chosen evidence by a stipulation by the Defendant. Thus, we find that the admission of the testimony of the two troopers involved in the prior arrests for DWI, to prove that the Defendant was convicted of the prior DWIs, was not error, or was the evidence relating to the Defendant's refusal to take the breath test. However, the testimony by Trooper Thomas that he was called to the scene of an accident with injury, does not go to the fact of whether the Defendant was guilty of DWI. It should not have been said. The statement had no relevance to the question of whether the Defendant was guilty of DWI in that accident and may have had prejudicial effect. Thus, it should not have been allowed into evidence. Our next question is whether such statement is harmless or not. An error is harmless when the guilty verdict actually rendered was surely unattributable to the error. State v. Johnson, 94-1379, p. 18 (La.11/27/95), 664 So.2d 94, 102. Under the facts of this case, we further find that the statement was harmless. As we have already determined, viewing the evidence under the Jackson standard, the evidence was sufficient to convict the Defendant of the crime charged.
The Defendant also argues that the admission of the evidence of the two prior convictions had the prejudicial effect of confusing the jury. The record reflects that the trial judge received a question from the jury which said, "Are we dealing with the 2000 case [or] all three?" To resolve the issue, the State and the Defendant agreed that the trial judge would tell the jury that they were determining the guilt or innocence of the Defendant in the 2000 case, and that the trial judge would reread the bill of information to them. The trial judge then told the jury that it was to determine the guilt or innocence of the Defendant in the 2000 case and reread the bill, as was agreed upon by all counsel. Additionally, the record reflects that the trial judge gave a limiting instruction to the jury, telling them that the prior convictions were alleged solely to enhance the penalty. In light of the foregoing, we find that the resolution of this jury inquiry, which was agreed upon by the State and the Defendant, was reasonable and not prejudicial to the Defendant.
The Defendant next contends that the trial court erred by admitting the fingerprint cards from the prior convictions. However, the admission of this evidence could not have prejudiced the Defendant since he stipulated to the prior convictions. Therefore, this issue lacks merit.
The Defendant also asserts that the State made an improper comment during its closing argument when it stated that the Defendant refused to take the breath test in the current case, as he did in his 1998 arrest. The Defendant argues that the State made another improper comment during its rebuttal argument when it mentioned that the Defendant refused to take the breath test again, after the breath test in 1997 resulted in a reading of .216.
The record reveals that the Defendant did not object to any portion of the State's closing argument and thus did not preserve the issue of any improper argument contained in it for appellate review. La.C.Cr.P. art. 841; State v. Bridgewater, 00-1529, p. 27 (La.1/15/02), 823 So.2d 877, 900. Our next question is whether the statements were of such a nature to be error, whether they are harmless or not. Even if the State made improper comments during closing argument, *636 the error was harmless. The trial judge instructed the jury that statements and arguments made by the attorneys were not evidence. Accordingly, we find that the trial judge did not err in denying the Defendant's motion for new trial or mistrial.

ERROR PATENT
The record was reviewed for patent errors, in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198. The review reveals errors in this case.
The transcript indicates that the trial judge's clerk told "Chris" that he needed to fill out the home incarceration form, presumably to provide the Defendant with notice of the conditions. However, if one were filled out, it is not in the record. Without any evidence in the record indicating that the Defendant was notified of the conditions as required by La.R.S. 14:98 D(3)(a), we cannot presume that he was so notified. Thus, we remand the case with instructions to the trial judge to notify the Defendant of the specific conditions of home incarceration, as provided in La.R.S. 14:98 D(3)(a), and to file written proof of the notification in the record, within 10 days of the rendition of this opinion.
Next, the commitment indicates that the trial judge advised the Defendant of the two-year prescriptive period for filing an application for post-conviction relief, pursuant to La.C.Cr.P. art. 930.8. However, the transcript shows that the trial judge did not so advise the Defendant. Where there is a discrepancy between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Thus, we will remand the case with instructions to the trial judge to inform the Defendant of the two-year prescriptive period by sending written notice to the Defendant within ten days after the rendition of this opinion and to file written proof in the record that the Defendant received such notice. See: State v. Esteen, 01-879, p. 28 (La.App. 5th Cir.5/15/02), 821 So.2d 60, 78.
Accordingly, the Defendant's conviction and sentence are hereby affirmed. The case is remanded with instructions to the trial judge to inform the Defendant of the conditions of home incarceration and of the two-year prescriptive period by sending written notice to the Defendant within ten days after the rendition of this opinion and to file written proof in the record that the Defendant received the notices.
CONVICTION AND SENTENCE AFFIRMED; REMANDED.
NOTES
[1] The trial judge also ordered the Defendant to:

(1) undergo a substance abuse evaluation and in-patient treatment program for four to six weeks;
(2) serve the remainder of the three-year sentence on home incarceration once he had completed the treatment program and his thirty days;
(3) complete and fully participate in a driver improvement program;
(4) pay a fine of $2,000 to be paid within six months of his release from home incarceration, his thirty days, and the four to six week in-patient treatment program. The trial court initially ordered the Defendant's vehicle to be seized, unless there was an exception in the law that applied. When it learned that the Defendant's parents were the lien holders for the full amount of the vehicle, the trial judge stated that he would not order the vehicle to be seized.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] State v. Prieur, 277 So.2d 126 (La.1973).
[4] Although the State indicated that it had accepted the stipulation, as was stated previously, it was in fact the State who offered the stipulation and the Defendant who accepted it.
[5] Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). In Old Chief, the crime charged was a convicted felon in possession of a firearm. The Court found there that the state could not specify the felony, based on federal law. The Louisiana Supreme Court in Ball distinguished the case and declined to follow Old Chief.