902 So.2d 542 (2005)
STATE of Louisiana
v.
James A. BROWN.
No. 04-KA-1194.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*544 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
James A. Williams, Butch Wilson, Gretna, Louisiana, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Defendant, James Brown, was found guilty of possession of marijuana with intent to distribute, LSA-R.S. 40:966(A), and was sentenced to twenty years at hard labor. Defendant now appeals. For the reasons that follow, we affirm the defendant's conviction, vacate the sentence and remand for re-sentencing.
The following facts were proven at trial. Detective Brandon Boylen, a narcotics officer with the Jefferson Parish Sheriff's Office, testified that, on April 18, 2002, he was involved in a drug investigation at 7517 Celestine Street in Marrero. During a brief surveillance, Boylen saw defendant, James Brown, leave the residence in a car with another man. Boylen called to other surveillance officers over the police radio to stop defendant. Boylen then saw two other men arrive together in a car. Those men entered the house, and the detective did not see them leave again. Boylen testified that he did not see the men take anything into the house.
Lieutenant Tim Miller testified that he supervised the investigation. He stated that, after monitoring the house from 6:00 p.m. to 6:30 p.m., he and Boylen approached a side door. Miller knocked and announced their presence. The occupants of the house did not respond. Through a glass pane in the door, the officer could see two women sitting at the kitchen table. One of the women went into another room. Miller kicked down the door, and the officers entered the house. Miller secured the house and waited for Sergeant Robert Gerdes to arrive with a search warrant. Boylen's arm was cut by broken glass from the door, and he left the scene to seek medical attention.
*545 Gerdes testified that the surveillance was triggered by a confidential informant's purchase of marijuana at 7517 Celestine Street two days earlier. Gerdes further testified that he obtained a search warrant for 7517 Celestine Street, and that he helped to execute the warrant. By the time Gerdes arrived at the scene with the warrant, defendant had been stopped in Westwego by other officers and transported back to the residence. Miller had by that time secured the scene. Gerdes testified that he located a duffel bag in a cedar chest in the home's only bedroom. The bag contained green vegetable matter bound in plastic wrap. The crime lab later tested the vegetable matter and determined it was marijuana. Gerdes also recovered a utility bill addressed to defendant at 7517 Celestine Street. The payment due date on the bill was April 25, 2002.
Gerdes testified that he advised defendant of his Miranda[1] rights. Tammy Lagarde, a resident of the house and defendant's girlfriend, was also there.[2] Gerdes gave her Miranda warnings also. Both defendant and Lagarde said they understood their rights. Gerdes testified that defendant approached him at the house and asked to speak with him. Gerdes and Miller took defendant into the bedroom and closed the door. Defendant admitted he had known about the marijuana, and stressed that Lagarde was innocent in the matter. Defendant admitted to ownership of the duffel bag. Defendant told the officers he knew who had brought the marijuana to the house, but he refused to disclose that person's identity. Gerdes testified that defendant's statement was not coerced, but was made freely and voluntarily. Defendant was arrested on marijuana charges.
Miller testified that the officers seized about ten pounds of marijuana, and that at the time of seizure, it had a value of $600.00 to 850.00 per pound. Lieutenant Bruce Harrison, a longtime narcotics officer, was accepted by the trial court as an expert in the use, packaging, distribution, and value of narcotics. He testified that marijuana has a street value of $500.00 to $1,200.00 a pound, depending on supply and demand at the time of seizure. Altogether, the ten pounds of marijuana seized in the instant case were worth $5,000 to 6,000. Harrison further testified that in his opinion, this amount of cocaine was more consistent with distribution than with personal use.
Joseph Lafrance testified at trial on behalf of the defense. He said that he has known defendant for six years, and that defendant dates his aunt, Tammy Lagarde. Lafrance stated that, as of the day of his arrest, defendant was living in Walnut Hill, Florida. He visited defendant there on several occasions. Defendant was in town for a visit on April 18, 2002.
Lafrance testified that on that day, he accepted a ride from Carlos Entariano, whose sister Lafrance dated. Entariano showed him a duffel bag he had in the car, and the large amount of marijuana that was inside of it. Entariano told him he was taking the marijuana to the Celestine Street house. Lafrance testified that State's Exhibit 6, the bag seized at the Celestine Street house, looked like the bag Entariano had. Lafrance said that while he was in the car, Entariano spoke to Trudy Hotard on a cellular telephone.
*546 Another defense witness, Tammy Lagarde, testified that she has three convictions for cocaine distribution, and an attempted armed robbery conviction. She said she has dated defendant for six to seven years. At the time of his arrest, defendant resided in Walnut Hills, Florida. He moved there in February, 2002. She stated that she left defendant's name on the account for her gas service even after he moved to Florida. Lagarde testified that she was aware defendant had told police he lived at her house.
According to Lagarde, defendant arrived in Marrero for a visit on April 17, 2002. She testified that Carlos Entariano was at her house, but that he left before defendant arrived. Entariano brought a duffel bag to her house, but she did not know what was in it. Lagarde testified that the officers did not show her a search warrant while they were at her house, but that she allowed them to search her home anyway.
Defendant testified that he lived at 7517 Celestine Street in January and February, 2002. During his April, 2002 visit to town, he stopped at Lagarde's house, but he primarily stayed on Green Street near Carrollton Avenue in New Orleans. When he was stopped by police on the evening of April 18, 2002, he was on his way from Lagarde's house to a Piggly Wiggly supermarket. The officers told him he was under investigation. He told the officers he had once lived at 7517 Celestine Street, but did not tell them he still lived there.
Defendant testified that the officers returned him to the Celestine Street house, and he was made to wait on the porch. He was not inside the house when officers found marijuana. However, the officers showed him the duffel bag, and attempted to goad him into touching it. Defendant testified he did not know who brought the marijuana into the house, and he did not tell police he knew who had left it there.
In his first assignment of error, defendant argues that the state did not prove he possessed the marijuana found at the Celestine Street residence. When issues are raised on appeal as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363, p. 7 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Williams, 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607. When circumstantial evidence forms the basis of a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Williams, 99-223 at p. 8, 742 So.2d at 608. When circumstantial evidence is used to prove a case, the trial judge must instruct the jury that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. This statutory test works with the *547 Jackson constitutional sufficiency test to evaluate whether all evidence, direct or circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury. State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it. LSA-R.S. 40:966(A); State v. Washington, 03-1135, p. 5 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977. Guilty knowledge is an essential element of the crime of possession of contraband. Since it is a state of mind, it need not be proven as fact. Rather, it may be inferred from the circumstances. State v. Major, 03-3522, pp. 8-9 (La.12/1/04), 888 So.2d 798, 803; State v. Lathers, 03-941, p. 6 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 885.
The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. A person not in physical possession of the drug is considered to be in constructive possession of a drug, even though it is not in his physical custody, when the drug is under that person's dominion and control. State v. Lathers, supra. A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control of the drugs. State v. Marshall, 02-1067, pp. 8-9 (La.App. 5 Cir. 2/25/03), 841 So.2d 881, 888, writ denied, 03-0909 (La.9/26/03), 854 So.2d 345.
The question of possession hinges on the particular facts of each case. Mere presence in an area where drugs are found or mere association with the person in actual possession does not constitute constructive possession. State v. Major, 03-3522 at p. 7, 888 So.2d at 802. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and, (6) evidence that the area was frequented by drug users. Id.; State v. Williams, 01-644, pp. 5-6 (La.App. 5 Cir. 11/27/01), 802 So.2d 909, 913.
At trial both Sergeant Gerdes and Lieutenant Miller testified that defendant admitted to knowledge of the marijuana's location, and of the person who delivered it to him. Defendant also told the officers that Tammy Lagarde, the home's primary resident, had no knowledge of the marijuana. Miller testified that none of the other occupants of the house took responsibility for the marijuana.
Defendant argues that he did not make any such admission to the officers, and that he said as much during his trial testimony. It is apparent, however, that the jury found the officers' testimony more credible. Where there is conflicting testimony, the determination of fact rests solely with the judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Cazenave, 00-183, p. 14 (La.App. 5 Cir. 10/31/00), 772 So.2d 854, 860, writ denied, 00-3297 (La.10/26/01), 799 So.2d 1151. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. State v. Benoit, 04-436, p. 8 (La.App. 5 Cir. 9/28/04), 885 So.2d 625.
Regardless of whether defendant was still living at the Celestine Street address *548 at the time of the offense, he clearly had access to the area where the marijuana was found. He had an intimate relationship with Tammy Lagarde, who lived at the house. The evidence showed he was inside the house shortly before the search warrant was executed. Detective Boylen testified that he saw defendant leave the house during his surveillance. By his own admission, defendant had a history of drug offenses, including a 1987 conviction for possession with intent to distribute marijuana.
We find that the state provided sufficient proof of possession to support defendant's conviction.
In his second assignment of error, defendant contends that the trial court erred in failing to grant his motion to suppress the evidence. He argues that police officers violated his constitutional right against unlawful search and seizure by entering the Celestine Street residence before obtaining a search warrant. Defendant does not challenge the validity of the initial traffic stop or the search warrant. He raises only the validity of the officers' entry into the residence.
The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Similarly, Article I, § 5 of the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."
As defendant notes, the United States Supreme Court recently reiterated the firmly established rule that police officers need either a warrant or probable cause to either arrest or search plus exigent circumstances in order to make a lawful entry into a home. Kirk v. Louisiana, 536 U.S. 635, 637, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599 (2002) (per curiam) (referencing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).
Testimony at trial showed the officers forced their way into the house before Sergeant Gerdes arrived with the warrant. Gerdes testified at trial, "When I personally entered the house, the house had already been secured, which meant, in essence means that some other officers had already entered the house. I was a little tardy getting there, but the house was already secured." Gerdes further testified that the officers who forced their way into the house did so before they had the warrant in-hand. Gerdes testified that it was he who found the marijuana, which necessarily would have occurred after the search warrant was obtained.
Initially, we note that without a search warrant, the officers were only within their rights to enter the house if there were exigent circumstances. The United States Supreme Court has defined exigent circumstances as "a plausible claim of specially pressing or urgent law enforcement need." Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 950, 148 L.Ed.2d 838 (2001). Exigent circumstances may arise "from the need to prevent the offender's escape, minimize the possibility of a violent confrontation which could cause injury to the officers and the public, and preserve evidence from destruction." State v. Brisban, 00-3437, p. 5 (La.2/26/02), 809 So.2d 923, 927; State v. Temple, 01-655, p. 11 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, 705, writ denied, 02-0234 (La.1/31/03), 836 So.2d 58.
At trial, Detective Boylen testified that he performed surveillance on the house for about thirty minutes before he and Lieutenant Miller forced entry. During that time, Boylen saw defendant and a second *549 man leave the house. A short time later, two other men arrived at the house in a car. The men went into the house. They did not have anything in their hands, they did not leave the house, and he did not see them engage in any criminal activity.
Boylen testified that he and Miller approached the side-entry door of the house. Miller announced their presence and knocked on the door. Through a glass pane in the door, the officers could see two women in the kitchen. One of the women moved to another part of the house. Miller kicked in the door, and the officers forced their way inside for "officer safety." Boylen explained that he and Miller were concerned the woman might be in the other room arming herself. Miller testified at trial that once he and Boylen entered the house, he secured the premises and waited for Gerdes to arrive with the search warrant.
The state asserts that the evidence supports a finding of exigent circumstances. It further argues that, assuming arguendo that the initial entry was illegal, recovery of the evidence was sufficiently attenuated from the initial entry in that the evidence was recovered during the execution of the validly obtained search warrant.
Evidence found as a result of a violation of a defendant's constitutional rights is admissible if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); State v. Randle, 98-1670 (La.App. 4 Cir. 12/22/99), 750 So.2d 353.
In State v. Fontenot, 01-0178 (La.App. 4 Cir. 8/8/01), 795 So.2d 410, the officers were presented with information that defendant was selling crack cocaine. The officer conducted a surveillance, and then one police officer left the scene to obtain a search warrant. As he was going to the magistrate, the defendant left the house in her car. The other officers stopped and arrested the defendant. She was returned to her house, where a female officer searched her and found drugs in the defendant's bra. After the warrant was obtained, the house was searched and additional drugs were found. On appeal the defendant argued that the police officers had no justification for entering her house before the warrant could be obtained, and that the warrantless entry tainted the subsequent search. She did not argue that the arrest, or the search incident to the arrest was illegal, and she did not argue that the warrant was not based on probable cause, or that the search subsequent to the warrant was illegal. The court found no error in the denial of the motion to suppress the evidence. Considering defendant's argument that because the officers entered the house before the warrant was obtained, and therefore the subsequent search was tainted, the court said that "The evidence seized from the defendant's bra was seized pursuant to a search incident to arrest. There was no other search of the residence and no other evidence was seized until the warrant was obtained. The defendant does not argue that the warrant was not supported by probable cause and it was so supported." At page 414.
See also State v. Kendrick, 35,233 (La.App. 2 Cir. 12/5/01), 804 So.2d 719, 724, and State v. Hickerson, 02-2117 (La.App. 4 Cir. 12/11/02), 838 So.2d 21,
In this case, the search was not conducted and the evidence was not found until after Gerdes arrived with the search warrant. Thus, the evidence was found, not because of the warrantless entry, but instead pursuant to the execution of the valid search warrant. Accordingly, we *550 find no error in the denial of defendant's motion to suppress.
Defendant also requests that this court review the record for errors patent. We have reviewed the record in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find the following which merit our attention.
The trial court imposed an illegally lenient sentence. The applicable sentencing provisions here are those in effect on April 18, 2002, the date the offense was committed. See, State v. Joseph, 99-1234, p. 8 (La.App. 5 Cir. 3/22/00), 759 So.2d 136, 140, fn. 2. At that time, LSA-R.S. 40:966 provided, in pertinent part:
A. Penalties for violation of Subsection A. Any person who violates Subsection A with respect to:
.....
(2) Any other controlled dangerous substance classified in Schedule I, shall upon conviction be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years, at least five years of which shall be served without benefit of parole, probation, or suspension of sentence, and pay a fine of not more than fifty thousand dollars.
The trial court failed to impose the mandatory fine, and also failed to order that at least the first five years of defendant's sentence be served without benefits.
The trial court's failure to impose the statutory restrictions is not cured by LSA-R.S. 15:301.1, because the portion of the sentence to be served without benefits is left to the discretion of the trial court. Accordingly, we vacate defendant's sentence, and remand the case to the trial court with instructions to impose defendant's sentence in accordance with the provisions of LSA-R.S. 40:966(B)(2).
We also note that the trial court erred in failing to advise defendant of the two-year prescriptive period for filing for post-conviction relief under LSA-C.Cr.P. art. 930.8. However, the trial court would be required to readvise defendant upon resentencing, and thus this error requires no action on our part.
For the above discussed reasons, the defendant's conviction is affirmed. The defendant's sentence is vacated and the case is remanded for resentencing pursuant LSA-R.S. 40:966(B)(2).
CONVICTION AFFIRMED, SENTENCE VACATED AND CASE REMANDED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Gerdes testified that, when defendant was stopped, he told officers he lived at 7517 Celestine Street.