GASKINS, J.
11The defendant, Dadrien Updite, was convicted of a misdemeanor, domestic abuse battery, a violation of La. R.S. 14:35.3. He was sentenced to six months in the parish jail, suspended, and placed on seven months of supervised probation, with the condition that he enter and complete a domestic violence counseling program. The defendant appealed, the appeal was converted to a writ application, and a writ of certiorari was granted. The defendant’s conviction and sentence are affirmed.
FACTS
The defendant, a Shreveport police officer, married the victim, Joney Pillows-Updite, in January 2010. On the evening of Thursday, March 4, 2010, and into the early morning of Friday, March 5, 2010, there was an altercation between the couple that was both verbal and physical. The victim’s nine-year-old daughter was present in the apartment during this event.
On Saturday, March 6, 2010, the victim called the police and reported the incident. In the early morning hours of Sunday, March 7, 2010, she and her daughter gave recorded statements to the police. According to the victim’s statement, the defendant came home on Thursday after attending a class at the police academy; he called her lazy and began yelling at her. At this point, they “tussled” but no blows were struck. According to the victim, the defendant shoved her at this time. The defendant then left the apartment to go to a movie. After he returned, their dispute resumed. She was in bed and wanted to go to sleep. The defendant yelled at her, calling her names. He shoved her first. He then began to hit her with a closed fist |2on the left side of her face, her left arm and chest. In addition to “punching” her, the victim said the defendant also choked her.
According to the victim’s statement to the police, she wanted to go to the hospital the next morning; she had a preexisting problem with her wrist and shoulder and feared that the defendant had caused a re-injury to her wrist. The defendant did not want her to go because he was worried about medical personnel seeing the bruises on her body. At some point, the victim told him to take his things and leave; he complied. Because she continued to experience pain from her injuries, for which she took Aleve, the victim decided to contact the police.
In her police statement, the victim also stated that the defendant had choked her previously. About a month before, he had *259 choked her until she had trouble breathing. She said he knew how to press enough to make her lose her breath but not pass out.
The police also took a brief statement from the victim’s daughter. She stated that her stepfather was mad when he came home. He and her mother went into their room. The daughter said she could hear him hollering and screaming and “knocking stuff down.” She said she heard her stepfather hit her mother and her mother crying.
The police then spoke to the defendant and informed him that he was under investigation for domestic abuse battery. He initially declined to give a statement. He then changed his mind and agreed to talk to the officers in the presence of his mother, who is a pastor. He stated that on Thursday evening, he made a remark to his wife about her being lazy. She hit him in |sthe face four times; he grabbed her shoulder and pushed her against the wall to stop her. He said they were in the bathroom and his stepdaughter was in another room. He denied hitting the victim and said she threatened to call the police, knowing that he could not afford to get in trouble.
In his statement, the defendant said that his wife had hit him previously and that she had left a scar and busted his lip three weeks before. However, he had not pressed charges.
On March 11, 2010, the victim signed a notarized “withdrawal of complaint” in which she stated that she wanted to withdraw her complaint of March 6, 2010. She asserted that it was not her husband’s intent to hurt her and that they both “misinterpreted” and “overreacted” during the incident. She claimed that she just wanted to make a “home report” but did not want charges filed against him. She further accused the police officers involved of “intimidating” and “misleading” her and forcing her to give a statement while she was “groggy” and “foggy” from medication.
The defendant was charged with domestic abuse battery, in violation of La. R.S. 14:35.3, by bill of information filed on May 5, 2010.
On May 28, 2010, the victim filed a petition for protection from abuse in which she alleged that the defendant had slapped, punched, choked, shoved and threatened her with bodily harm. Specifically, she asserted that in February 2010, he had pushed and choked her and that on March 4, 2010, he slapped, punched, pushed and choked her. She claimed to be afraid of his “explosive temper, threats and abuse.” She signed an affidavit verifying the petition. An order of protection was signed on May 28, 2010.
|4On June 29, 2010, the victim filed a petition for divorce in which she alleged that she and the defendant had separated on May 17, 2010, without reconciliation. She further asserted that the defendant had physically abused her and that she feared harm during the pendency of the proceedings. She requested and received a temporary restraining order against the defendant. The victim signed an affidavit of correctness.
On February 24, 2011, and April 21, 2011, the instant criminal matter was tried. The first witness to testify was the victim’s daughter. She testified that the defendant was again living with her and her mother. She initially denied recalling the March 2010 incident; however, the audio recording of her police statement was played without objection. Thereafter, she recalled details of the incident, including hearing her mother telling the defendant, “Get out of my face. Leave me alone, and stop grabbing my arm.”
*260 The victim took the stand and recanted her allegations of abuse. She admitted signing the divorce petition verification but said she didn’t read the petition “line byline” beforehand. She said the protective order petition was written by a woman at the YWCA from the police reports and that she did not read it before signing it. However, she admitted supplying the dates that were filled in. She asserted that she wrote a typed four-page statement dated March 18, 2011, in which she accused the police of “manipulating]” and “deceiving]” her and the DA of defaming her when it requested a material witness warrant for her. When asked if she had told someone that the typed statement was actually written by her mother-in-law, she admitted |Bthat she might have said that “just being angry.” When her recorded statement was played without objection, she said she remembered “some” of it. She accused the police officers of misleading her and asserted that she “wasn’t in my right mind” when the statement was taken because it was late and she was on “medication.” She claimed that she did not want her husband arrested; instead she wanted marital counseling and for his supervisor to “talk” to him.
In her trial testimony, the victim insisted that her husband did not intend to hurt her. She said she told the officers that it was dark and she could not see if the defendant punched or pushed her to cause the bruises on her chest. She said that instead of punching her, he could have “just fell on the bed.” She additionally insisted he restrained her because she threw something at him and he might have thought she was going to hit him. She admitted that she was physically sore from their “quarrel.” In fact, she testified that the next day she was in so much pain, she could not roll over in any direction.
Sergeant Jody Jones, one of the two officers who interviewed the victim and her daughter, testified. He stated that the victim was able to give a clear statement about what happened. She had bruises on her left upper arm, left chest, left upper, back and right upper arm. She stated that she got these bruises from being struck by the defendant and that he also twisted her arm. Additionally, she told him that the defendant choked her but she had no visible bruises indicating that. Although she said she had taken some Aleve, the victim appeared lucid and aware. Neither he nor the other | ^detective prompted her to say where the bruises came from. She never said it was too dark to see whether the defendant hit her. Nor did she say she threw anything at him or hit him first.
The defendant testified in his own defense. He insisted that he only restrained his wife when she was physically violent toward him. He also stated that she had hit him three weeks before the instant incident. The defendant’s mother testified that he called her about the argument with his wife. He told his mother that he had grabbed the victim’s arm to keep her from hitting him. He thought they could work things out, and she suggested that the couple get counseling. When she spoke to her daughter-in-law, the victim did not tell the defendant’s mother that he had hit her.
At the conclusion of the evidence, the trial court found the defendant guilty as charged, concluding that the testimony indicated that there was a battery initiated by the defendant. The court sentenced him to six months in the parish jail, suspended, and seven months of supervised probation. The defendant was also ordered to complete a domestic violence counseling program.
The defendant sought review of his conviction.
*261 SUFFICIENCY OF EVIDENCE

Law

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under 7Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When |sthe direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Domestic abuse battery is the intentional use of force or violence committed by one household member upon the person of another household member. La. R.S. 14:35.3(A).

Discussion

The evidence presented at trial demonstrated the following events. The defendant and the victim- engaged in an argument after he called her lazy. Subsequently, they argued again and the situation escalated to the defendant choking, punching and hitting the victim. The victim received bruises which she photographed. She gave a recorded statement to the police detailing the abuse. Although she later attempted to justify and *262 19excuse her husband’s actions, the victim testified that the defendant’s confrontation with her became physical. The detective who interviewed the victim testified that she had visible bruising and that the victim had not mentioned any of her later excuses for the defendant’s actions in her statement to the police. While the victim’s daughter did not see the fight, she heard noises and statements that indicated that the defendant struck the victim. All of the testimony accepted by the trial court as credible indicated that there was a battery initiated by the defendant.
We find that the evidence at trial presented by the state and accepted by the trial judge proves every element of the crime of domestic abuse battery beyond a reasonable doubt and that the Jackson standard has been met. Accordingly, this assignment of error lacks merit.
VICTIM’S INCONSISTENT STATEMENTS
In two assignments of error, the defendant complains that the trial court improperly relied upon evidence that was used to impeach the victim as substantive evidence.

Law

While prior inconsistent statements are admissible to attack credibility under La. C.E. art. 607(D)(2), such nonhearsay statements may also be admissible for their assertive value. See State v. Rankin, 42,412 (La.App.2d Cir.9/19/07), 965 So.2d 946, writ denied, 2007-2067 (La.3/7/08), 977 So.2d 897; State ex rel. D.W., 09-855 (La.App.5th Cir.9/14/10), 47 So.3d 1048; State v. Wells, 2010-1338 (La.App.4th Cir.3/30/11), 64 So.3d 303.
Imln relevant part, La. C.E. art. 801 now provides:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The de-clarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness’ attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement; ... [1]
In State v. Rankin, supra, a domestic abuse victim who suffered facial injuries and a broken finger recanted at trial. However, she had previously given two statements to the police identifying the defendant as the person who inflicted her injuries. Following a bench trial, the trial court convicted the defendant of second degree battery. We affirmed the defendant’s conviction. The prior inconsistent statements were corroborated as required by La. C.E. art. 801(D)(1)(a), and were thus nonhearsay. We noted that since the defendant failed to object to the use of the prior inconsistent statements at trial, it was impossible to determine whether they were used for strictly impeachment purposes or for their assertive value as well. Therefore, it could only be assumed that they were admitted for both purposes. We found no abuse in the trial court’s discretion in deeming the statements admissible under La. C.E. art. 801(D)(1)(a).
*263 In the instant case, the prior inconsistent statements of the victim were corroborated by other evidence. The victim, her daughter and thejjjdefendant all testified as to an argument between the victim and the defendant that turned violent. The victim sustained visible bruises that were consistent with her police statement and were observed by the officer who took her statement. Shortly after the incident, the victim contacted the police to report her injuries. The recorded statement she gave to the officers was internally consistent.[2] The officer who took the victim’s statement testified that she never mentioned it being too dark to see, throwing anything at the defendant or otherwise provoking him into “restraining” her for his own protection.
We find no abuse of the trial court’s discretion in admitting the statements under La. C.E. art. 801(D)(1)(a). This assignment of error is meritless.
TESTIMONY OF CHILD WITNESS
In two assignments of error, the defendant attacks the testimony of his stepdaughter. He contends that the trial court improperly relied upon her hearsay testimony to establish elements of the offense, 1.e., her recitation of what she heard her mother say to the defendant to prove that the defendant touched the victim. Additionally, he argues that the record does not demonstrate that the child was a competent witness.
In her testimony, the child stated that she heard her mother say, “Get out of my face. Leave me alone, and stop grabbing my arm.” The defendant now complains that this statement was hearsay which the trial 112court impermissibly relied upon in convicting him. However, we find that the statement falls under the excited utterance exception to the hearsay rule, La. C.E. art. 803(2); its admission was proper.
As to the child’s competency to testify, the record does not contain a contemporaneous objection by the defendant challenging her participation in the trial. Therefore, this issue was not preserved for review as required by La. C. Cr. P. art. 841.[3]
These assignments of error are merit-less.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. This article was amended to its present wording in 2004, apparently in part to "address cases of domestic violence ... which are among the most fertile grounds for non-cooperative nonparty witnesses.’’ State v. Rankin, supra.

. Our review of the audio recording belies the victim’s later assertions that she was medicated, sleepy or “not in her right mind” at the time she gave her statement to the police. To the contrary, the victim sounded calm and coherent; she was able to answer the interviewer's questions in a competent and intelligent fashion.

. We note that proper understanding, not age, is the single general test of witness competency. La. C.E. art. 601, Comment (b). The victim’s daughter testified at trial that she was 10 years old; she stated that she was in the fifth grade and made good grades. She affirmed that she knew to tell the truth. The trial judge — who is tasked with determining the competency of a witness under La. C.E. art. 104(A) — had the benefit of personally observing the child and obviously accepted her testimony.