JUDE G. GRAVOIS, Judge.
1 ..¡Defendant, Jose Alfaro, has appealed his convictions of aggravated rape (Count 1) and molestation of a juvenile (Count 2). For the reasons that follow, we affirm defendant’s convictions on Counts 1 and 2, affirm defendant’s sentence on Count 1, vacate defendant’s sentence on Count 2, and remand the matter with instructions.

FACTS

At trial, Officer Sydney Gonzales testified that while employed as a school resource officer at Gretna Middle School on January 20, 2011, he was approached by a student, K.F.,[1] the victim in this case, who asked to speak with him. As K.F. spoke with the officer that morning, “she kept getting upset and very emotional, crying to where she couldn’t breathe.” Eventually she told Officer Gonzales that she was not ready to talk yet, so he sent her back to class. Later that morning, K.F. returned to the officer and informed him that she was ready to talk. Officer Gonzales, along with Assistant Principal Alisa Roy, met with K.F. in his office, [4where she “once again broke down real hysterical, trying to get it out.” Finally, K.F. informed Officer Gonzales and Ms. Roy that when she was around eight years old, her step-father started touching her.[2] This behavior stopped for a few years, then it started again, at which point her step-father began engaging in sexual intercourse with her. As K.F. made this revelation, she was crying to the extent that Officer Gonzales and Ms. Roy “had to actually take breaks and get some water to calm her down because [they] couldn’t understand some of the things she was saying.” When asked by Ms. Roy why she waited until that day to divulge the abuse, K.F. explained that it was difficult for her to have relationships with boys while she was having sex with her step-father.
After meeting with K.F., Officer Gonzales contacted Detective Richard Russ of the Gretna Police Department and informed him that a student claimed that she had been raped by her mother’s boyfriend. Detective Russ proceeded to the school where he met with K.F., along with Detective Trice Lear, Officer Gonzales, Assistant Principal Roy, and the school counselor, Linda Molaison. During this meeting, K.F. repeated the same allegations of abuse. Following this meeting, Detective Russ obtained a warrant for defendant’s arrest, which was executed later that day when defendant was taken into custody at the family home located in Gretna. Detective Russ then contacted K.F.’s mother, N.F., and informed her that her boyfriend had been arrested pursuant to allegations that he had raped K.F.
Kay Ulrich Evans of the Department of Children and Family Services was contact *520 ed with reference to these allegations on January 20, 2011. She proceeded to Gret-na Middle School where she met with K.F., who she described as “emotional.” K.F. disclosed the sexual abuse to Ms. Evans, after which Ms. Evans accompanied K.F. home as part of her investigation. While at K.F.’s home, K.F. |fifurther informed Ms. Evans that defendant had taken pictures of her with his cellular phone.
Upon receiving information that defendant’s cellular phone may contain photographic evidence, Detective Russ proceeded to KF.’s home, where he encountered K.F. and her mother. N.F. voluntarily relinquished defendant’s phone to the detective. Detective Russ then obtained a search warrant to search the contents of the phone.
Detective Louis Ratcliff of the Jefferson Parish Sheriffs Office, who was accepted by the court as an expert in the field of cell phone forensics, testified that he examined defendant’s cell phone. Several photographs, in addition to other data, were recovered from the phone, which Detective Ratcliff compiled in a report.[3] Several of the photographs included images of a vagina, hand, and penis. Detective Ratcliff testified that these images were not downloaded to the phone from the Internet, were not texted to the phone, and were not e-mailed to the phone; rather, these images were captured by the camera on the phone.
On January 27, 2011, one week after K.F. reported the abuse, Staci Lanza of the Children’s Advocacy Center (the “CAC”) interviewed K.F.[4] In the interview, K.F. stated that when she was about six, seven, or eight years old, on more than one occasion, as she laid in her mother and step-father’s bed with her step-father, he placed his hand in K.F.’s underwear and penetrated K.F.’s vagina with his fingers. Then, beginning around when K.F. was ten or eleven years old, on more than one occasion, defendant called K.F. to his bedroom. He would then lock the door. He would talk to her about school and her social life before asking to examine her vagina. Behind the locked door, while K.F. laid on the bed, defendant | figave her a pillow or sheet to cover her face as he stood in front of her and examined her vagina, cleaning it with “baby wipes.” These “check-ups” became more overtly sexual, as defendant penetrated K.F.’s vagina with his fingers. As he did this, he explained that he was using his fingers to assess the cleanliness of her vagina. Eventually, defendant inserted his penis into K.F.’s vagina with the protection of a condom.[5]
K.F. also revealed that when she was 13 or 14 years old, on more than one occasion, defendant licked her vagina. In another incident towards the end of 2010, defendant used his cellular phone to photograph her vagina and his penis entering her vagina. K.F. stated that the last incident occurred when she was 14 years old. At the time, she had a boyfriend and was ill with a virus, which prompted defendant to suspect K.F. was pregnant. With this suspicion, he told K.F. that he needed to examine her vagina. After examining her, defendant took out a condom and proceeded to insert his penis into her vagina.
*521 Detective Russ testified that on March 2, 2011, he accompanied K.F. and N.F. to the Audrey Hepburn Care Center for a forensic medical examination of K.F. However, K.F. refused to undergo the examination and recanted her previous allegations, asserting that she had lied and fabricated the allegations. K.F. and N.F. then left the Audrey Hepburn Care Center without the detective’s knowledge. Detective Russ went out into the parking lot to look for them; they then drove up and rolled their window down. Detective Russ told K.F. that he believed her initial allegations and would continue to fight for her. N.F. then drove off. K.F. and N.F. ceased cooperating in the investigation, and Detective Russ never spoke to them again.
17Poctor Jamie Jackson of the Audrey Hepburn Care Center, who was accepted by the court as an expert in the field of child abuse pediatrics, testified that he met with K.F. on March 2, 2011. K.F. refused to offer a description of the incident and refused to undergo a physical examination. As a result, Dr. Jackson was unable to fully evaluate K.F. Dr. Jackson testified that most children do not report abuse for one to five years after the abuse and that research indicates that anywhere from four to thirty percent of children recant reports of abuse. Of those recanted reports, in sixty to ninety percent of the cases, the abuse is confirmed. He explained that children recant for a variety of reasons, including fear and threats. Also child victims may recant after seeing “the consequences or reactions of the people around them.”
At trial, the State called K.F. to the stand whereupon she invoked her Fifth Amendment right against self-incrimination out of concern for “charges of a false statement to police officers, as well as obstruction of justice and possible conspiracy.” Consequently, the State moved to compel K.F.’s testimony pursuant to La. C.Cr.P. art. 439.1, pursuant to which K.F. was granted immunity such that no testimony compelled under the order would “be used against [her] in any criminal case, including but not limited to the past falsifying of a police report and/or obstruction of justice except for prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.”
K.F. then testified that she was born in Honduras and later moved to the United States to join her mother in New Orleans. Upon arrival, she went to live with her mother and defendant, who K.F. came to know as her step-father, even though he was not legally married to her mother. When K.F. arrived, her mother was pregnant with K.F.’s half-brother.
1 ¡¿Prior to Hurricane Katrina, the family moved from New Orleans to Gretna. K.F.’s mother worked Monday through Friday, while defendant, who worked in construction, was not steadily employed. As a result, on the days when defendant was not working, he watched K.F. and her younger brother. K.F. stated that her relationship with defendant has “always been good.”
K.F. testified that her complaint to Officer Gonzales was fabricated and that the allegations of rape were not true. K.F. explained that she did this because she “wanted to get [her] own ways. [She] wanted to do anything [she] wanted.” She testified that defendant never abused her, nor touched her vagina.
N.F. testified that she has been United States for 14 years, that she has been with defendant for 12 years, and that she considers defendant to be her husband even though they are not legally married. When N.F. immigrated to the United States from Honduras, she left K.F. behind on account of her youth. Then, when K.F. was six *522 years old, she arrived in the U.S. to join her mother.
N.F. explained that K.F. began to mature at an early age, menstruating and developing breasts at 10 years old. N.F. testified that K.F. had a bad temper, where “she gets mad very easily because she wants things.” Specifically, “she was aggravated all the time because she want[s] her boyfriends. She want[s] boys [to] come into the house.” N.F. explained that it was difficult to discipline K.F. N.F. and defendant attempted such disciplinary measures as taking away the Internet and KF.’s phone and eventually resorted to cancelling KF.’s upcoming “quineeañera,” a traditional celebration' of a Latin female’s fifteenth birthday.
N.F. testified that on January 20, 2011, she received a phone call from a detective informing her that K.F. had reported that defendant had been molesting her. In shock and disbelief, she proceeded to her daughter’s school. Upon arrival, N.F. met with “two ladies” who questioned N.F. regarding her fitness to care for |3her children. At the conclusion of the meeting, N.F. signed “a paper” agreeing to keep her children away from defendant.
Later that day, Detective Russ arrived at N.F.’s house to obtain defendant’s cell phone. N.F. testified that she handed the phone over to the detective because he indicated to her that if she didn’t turn over the phone, he would be able to obtain it anyway.
On January 27, 2011, N.F. accompanied her daughter to the CAC where K.F. gave an interview. After this interview, K.F. began asking N.F. such questions as, “What will happen if I lie?” N.F. told her daughter to “always say the truth. The truth will set you free.”
N.F. was subsequently asked to bring K.F. back to Children’s Hospital for an evaluation. Prior to the appointment, K.F. informed her mother that she did not want to go. Unsure of how to proceed, N.F. contacted the “social worker” who encouraged her to go “because you don’t want people to believe that it’s you telling her what to do.” The “social worker” also advised her that if K.F. did not want to undergo the examination, then that was her decision. K.F. refused the examination. When asked by Detective Russ why K.F. was refusing the exam, N.F. responded that she did not know, but that it was her daughter’s decision. Detective Russ then told K.F. that he believed her first story and that he was “going through with this with or without you.”
N.F. testified that although she never believed K.F.’s allegations, she did not pressure K.F. in any way to change her story, nor was she aware of anybody else attempting to do so. N.F. stated that she does not believe that defendant sexually abused her daughter. She never witnessed anything to indicate the relationship between defendant and K.F. was anything other than a normal father-daughter relationship. After his arrest, N.F. spoke with defendant nearly every day on the | mphone while he was incarcerated.[6] N.F. testified that defendant was not angry with K.F. for making these allegations.
Defendant took the stand and denied touching K.F. in any sexual manner and denied taking any pictures of KF.’s vagina. He admitted to taking pictures of a woman’s vagina, a woman who he claimed he was seeing “on the side.”
Defendant explained that for the two years prior to January 20, 2011, he and N.F. were experiencing disciplinary prob *523 lems with K.F. due to her desire to have boyfriends. As a result, N.F. and defendant restricted KF.’s access to the Internet and cell phone, as well as her social time with friends. In response to these restrictions, K.F. became mad, slamming doors and talking back. Defendant believed that K.F. was angrier with him than with N.F. Then, in January of 2011, the disciplinary problems became more acute as K.F. was caught on more than one occasion bringing boys into the home. As a result of this, defendant and N.F. decided to cancel K.F.’s quinceañera.

COUNSELED ASSIGNMENT OF ERROR NO. ONE

Sufficiency of the evidence

In his first counseled assignment of error, defendant argues that the evidence was insufficient to support his convictions of aggravated rape and molestation of a juvenile. Specifically, defendant contends that the State did not present evidence proving that he committed the charged offenses. Rather, defendant maintains that the evidence indicated K.F. fabricated the allegations of sexual abuse. In response, the State asserts that the jury, as the finder of fact, was entitled to evaluate K.F.’s credibility, and that under the facts of this case, the jury’s determination of guilt was reasonable.
|nIn reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert, denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id.
When the trier of fact is confronted by conflicting testimony, fact findings rests solely with the judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Watson, 08-214 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 785. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, vnit denied, 08-0987 (La.1/30/09), 999 So.2d 745. Specifically in sex offense cases, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Id. at 153-54.
Defendant was charged with one count of aggravated rape in violation of La. R.S. 14:42. Aggravated rape is defined in part as “a rape committed ... where the 11?anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed ... [w]hen the victim is under the age of thirteen years.” La. R.S. 14:42(A)(4). When the rape involves vaginal or anal intercourse, any sexual penetration, however slight, is sufficient to complete the crime. *524 La. R.S. 14:41(B). Oral sexual intercourse is defined in pertinent part as the “touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.” La. R.S. 14:41(0(1).
Defendant was also charged with one count of molestation of a juvenile, defined in La. R.S. 14:81.2(A)(1) as follows:
[T]he commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.
With regard to the molestation charge, the indictment specified that defendant had a position of control or supervision over K.F. when he molested her. The record supports the finding that defendant had a position of control or supervision over K.F., as she and N.F. testified at trial that defendant, as her step-father, often watched her and her younger brother while N.F. was at work. Further, the testimony indicates that defendant was the main disciplinarian in the household.
With regard to the aggravated rape charge, convictions of aggravated rape have been upheld in the absence of medical evidence. In State v. Roca, 03-1076 (La. App. 5 Cir. 1/13/04), 866 So.2d 867, 875-76, writ denied, 04-0583 (La.7/2/04), 877 So.2d 143,' this Court affirmed the defendant’s convictions of aggravated rape and molestation of a juvenile despite the lack of medical evidence |iawhen the victim testified at trial that the defendant forced her to engage in various sexual acts, including the fondling of genitals, sexual intercourse, and oral copulation.
In the instant case, there was no medical evidence of sexual abuse introduced. The jury viewed the videotape of KF.’s statement taken at the CAC in which she detailed the years of sexual abuse she endured by defendant. At trial, however, K.F. testified that her previous allegations were false and that defendant did not sexually abuse her. In returning verdicts of guilty as charged, the jury obviously discredited K.F.’s trial testimony and gave credence to her CAC interview. This was within the jury’s sound discretion.
In State v. Updite, 47,007 (La.App. 2 Cir. 2/29/12), 87 So.3d 257, 260, the defendant was convicted of domestic abuse battery despite the fact that at trial the victim recanted her prior allegations of abuse. When the defendant challenged this on appeal, the Second Circuit found the use of the victim’s prior allegations permissible as substantive evidence (as opposed to its use solely for impeachment purposes). The court reasoned that this was proper since the victim’s prior allegations did not constitute hearsay pursuant to La. C.E. art. 801(D)(1)(a).[7] As mandated by this provision, the court found that the victim’s prior allegations were corroborated by other evidence introduced at trial, e.g., visible bruises were consistent with the victim’s statement to police, the victim’s statement *525 given to the police shortly after the incident was internally consistent, and the officer who obtained the statement testified regarding the victim’s inconsistent trial testimony. Id. at 262-63.
| ^Similarly, in the instant case, evidence introduced at trial corroborated K.F.’s CAC interview: Officer Gonzales, Alisa Roy, and Detective Russ offered testimony that was consistent with KF.’s CAC interview. In addition, as the victim in this case was a minor, the legislature has deemed such videotaped oral statements, like the one here, admissible in evidence as an exception to the hearsay rule. See La. R.S. 15:440.3.
Further, this Court has recognized that expert testimony can assist a jury in understanding the significance of a child-witness’s demeanor, inconsistent reports, delayed disclosure, and recantation. State v. Myles, 04-434 (LaApp. 5 Cir. 10/12/04), 887 So.2d 118, 125. An expert witness can explain to the jury that a child-witness’s seemingly abnormal behavior (such as delayed reporting, inconsistent statements, and recantation) is normal for children who have been sexually abused and can also dispel jurors inaccurate perceptions allowing them to better assess a child-witness’s testimony. Id.
In the instant case, the jury was assisted by the expert testimony of Dr. Jackson, who explained that most children do not report abuse for one to five years after the abuse. He explained that research indicates that anywhere from four to thirty percent of children recant reports of abuse. Of those recanted reports, in sixty to ninety percent of the cases, the abuse is later confirmed. He expounded that children recant for a variety of reasons, such as fear and threats, and that child victims may recant after seeing “the consequences or reactions of the people around them.”
Clearly the jury in this case discredited the trial testimony of K.F., N.F., and defendant, while giving credence to K.F.’s CAC interview, which was corroborated by the testimony of Officer Gonzales, Ms. Roy, and Detective Russ.
 | lñIt is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Reed, 11-507 (LaApp. 5 Cir. 2/14/12), 88 So.3d 601, 607, writ denied, 12-0644 (La.9/14/12), 97 So.3d 1014. Indeed, a reviewing court errs by substituting its own appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Callo-way, 07-2306 (La.1/21/09), 1 So.3d 417, 418.
The jury plainly rejected KF.’s trial testimony and found her allegations made during the CAC interview to be credible. In this interview, K.F. stated that starting when she was six, seven, or eight years old, her step-father (defendant), on more than one occasion, penetrated her vagina with his fingers. When she was ten or eleven years old, defendant began “examining” KF.’s vagina, penetrating it with his fingers, and eventually inserting his penis into her vagina. Then, when K.F. was 13 and 14 years old, defendant licked K.F.’s vagina and photographed his penis entering her vagina. K.F. stated that she often asked defendant to stop because he was hurting her. She further stated that as she got older, she told defendant that what he was doing was wrong, and defendant responded that it was she who started this when she was younger by coming into his bed and putting his hand into her *526 underpants. Additionally, K.F. stated that when she told defendant to stop, he would become angry.
Viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found defendant guilty beyond a reasonable doubt of aggravated rape and molestation of a juvenile.
This assignment of error is without merit.

1, .COUNSELED ASSIGNMENT OF ERROR NO. TWO

Excessive sentence

In his second counseled assignment of error, defendant argues that his life sentence without the benefit of parole, probation, or suspension of sentence is unconstitutionally excessive. The State contends otherwise.
In his motion to reconsider sentence, defendant argued that his sentence of life without benefits was excessive in light of two United States Supreme Court cases: Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641,171 L.Ed.2d 525 (2008) (holding unconstitutional a sentence of death for the rape of a child that did not result, and was not intended to result, in the death of the victim); and Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding unconstitutional a sentence of life without parole for a juvenile convicted of a non-homicide crime).
Defendant’s reliance on Kennedy and Graham in his motion to reconsider is misplaced. These two cases concern specific circumstances — the death penalty for the rape of a child, and a life sentence for a juvenile convicted of a non-homicidal crime — which are not present here, as defendant was not sentenced to death, nor was he a juvenile at the time of the offenses.
In this case, defendant’s life sentence is mandated by La. R.S. 14:42(D).[8] Nevertheless, a mandatory sentence may still be reviewed for constitutional excessiveness. State v. Royal, OS-439 (La.App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, writ denied, 03-3172 (La.3/19/04), 869 So.2d 849. A mandatory minimum sentence enjoys the presumption that it is constitutional. Id. To rebut this presumption, the defendant must show that: “ ‘[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of 117the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances.’ ” Id. (Citation omitted.)
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. Smith, 839 So.2d at 4.
*527 A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332 (LaApp. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discretion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. Id.
First, considering the nature of the crime in this case, the evidence adduced at trial established that defendant committed aggravated rape when he engaged in, among other things, the particularly repugnant act of sexual intercourse with a child entrusted to his care by virtue of his relationship with the child’s mother. 1 ^Aggravated rape has been recognized by the Louisiana Supreme Court as “one of the most violent felonies a person can commit,” which “deserves a harsh penalty.” State v. Foley, 456 So.2d 979, 983 (La. 1984).
Next, regarding the nature and background of the offender, the record is devoid of any indication that defendant has a criminal history.
Concerning the third factor, in comparing defendant’s sentence to those imposed for similar crimes by this Court and others, we find that defendant’s sentence is supported by the jurisprudence. For instance, in State v. Arabie, 07-806 (La.App. 5 Cir. 3/11/08), 982 So.2d 136, 142-^3, writ denied, 08-0928 (La.l1/21/08), 996 So.2d 1104, this Court found that the defendant’s mandatory sentence of life imprisonment without the benefit of parole, probation, or suspension of sentence for his conviction of aggravated rape of a juvenile was not constitutionally excessive. See also State v. C.S., 10-507 (La.App. 3 Cir. 11/17/10), 50 So.3d 983, 987-88; and State v. Brown, 97-2260 (La.App. 4 Cir. 10/6/99), 746 So.2d 643, 652.
In defendant’s brief to this Court, he argues he is entitled to a downward departure from his mandatory life sentence for several reasons. One, the gravity of the offense was “absent from the proceedings” because defendant “was convicted wholly on the false accusations of an angry, rebellious teenager.” Two, the jury was not presented with evidence that the victim was injured by or suffered psychological damage as a result of the sexual abuse. And three, there was no indication that defendant poses a threat for recidivism.
First, we have rejected defendant’s contention that his conviction was based on false accusations. Second, defendant contends that he is entitled to a downward departure because no evidence of injury, psychological or otherwise, was presented to the jury. It is noted that the offense of aggravated rape does not require proof of 11flinjury. See La. R.S. 14:42. Rather, the legislature’s decision to criminalize the act of aggravated rape deems such an act injurious. Furthermore, the Louisiana Supreme Court has rejected a similar contention that a defendant’s life sentence for aggravated rape was excessive because the victim did not suffer lasting psychological damage, declaring that “aggravated rape inflicts mental and psychological damage to its victim.” Foley, 456 So.2d at 983.
Lastly, defendant asserts that he is entitled to a downward departure because he does not pose a threat as a recidivist. The evidence upon which defendant’s instant *528 convictions are based belies this assertion. In the victim’s CAC interview, she explained that her sexual contact with defendant occurred at different times during her childhood: between the ages of six and eight, ten and eleven, and thirteen and fourteen. This pattern of behavior does not support defendant’s contention that he bears no risk as a repeat offender.
Accordingly, defendant has failed to rebut his life sentence’s presumption of constitutionality by showing that he is “a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances.” Rather, having been convicted of repeatedly engaging in sexual acts with a child entrusted to his care, we find defendant’s sentence is tailored to his culpability.
Thus, the trial court did not err in imposing the mandatory life sentence without benefits on defendant’s conviction for aggravated rape.
This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. ONE

In his first pro se assignment of error, defendant raises several claims, which will be addressed in turn.
| improper granting of State’s motion to compel testimong
Defendant first contends that the trial court abused its discretion in granting the State’s motion to compel testimony. On December 19, 2011, pursuant to the State’s request, the trial court issued a subpoena commanding the presence of K.F. at the trial court on January 3, 2012 for the trial of defendant. On that date, the State informed the court that in the event the victim invoked her Fifth Amendment right against self-incrimination and refused to testify, the State was prepared to compel her testimony.
The matter was continued and trial commenced on January 18, 2012. On the second day of trial, January 19, 2012, in anticipation of K.F. taking the witness stand and refusing to testify pursuant to her privilege against self-incrimination, the State, seeking to compel her testimony, requested that K.F. take the stand and invoke her privilege outside the presence of the jury. K.F. did just that. Consequently, the State moved to compel K.F.’s testimony pursuant to La.C.Cr.P. art. 439.1. The trial court granted the motion, ordering K.F. to “give testimony when called to testify during the trial of defendant.” The Order further provided that “any information directly or indirectly derived from [the compelled testimony] shall not be used against [K.F.] in any criminal case except a prosecution for perjury, giving a false statement or otherwise failing to comply with the Order.” Pursuant to this grant of immunity, K.F. testified and answered the prosecutor’s questions, in which she denied the allegations against defendant.
The compulsion of testimony is governed by La.C.Cr.P. art. 439.1, which provides:
A. In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a grand jury of the state, at any proceeding before a court of this state, or in response to any subpoena by the attorney general or district attorney, the judicial district court of the district |j>,in which the proceeding is or may be held shall issue, in accordance with Subsection B of this article, upon the request of the attorney general together with the district attorney for such district, an order requiring such individual to *529 give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in Subsection C of this article.
B. The attorney general together with the district attorney may request an order under Subsection A of this article when in his judgment
(1) the testimony or other information from such individual may be necessary to the public interest; and
(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self incrimination.
C. The witness may not refuse to comply with the order on the basis of his privilege against self incrimination, but no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.
D. Whoever refuses to comply with an order as hereinabove provided shall be adjudged in contempt of court and punished as provided by law.
In the instant case, in accordance with La.C.Cr.P. art. 439.1(A), K.F. had been called to testify in a “proceeding before a court of this state” by virtue of a subpoena granted at the request of the district attorney. Pursuant to Subsection (B) of this Article, both the attorney general and the district attorney moved to compel the testimony of K.F. on the grounds that she “is unlikely to testify or provide information regarding the subject [of] aggravated rape on the basis of her privilege against self-incrimination” and that “the testimony or other information from [K.F.] may be necessary to the public interest.” Consequently, the trial court, in accordance with Subsection (A), issued the Order compelling the testimony of K.F.
|?,i.The foregoing demonstrates that both the State and the trial court complied with the provisions of La.C.Cr.P. art. 439.1. As a result, the trial court did not err in granting the State’s motion to compel KF.’s testimony in this ease.

Violation of defendant’s right to confrontation

Defendant next argues that by permitting the State to treat K.F. as a hostile witness, his Sixth Amendment right to confrontation was violated because he was not allowed to cross-examine K.F.
On the second day of trial, January 19, 2012, after KF.’s testimony had been compelled and she had answered the prosecutor’s questions during direct examination, defense counsel began his cross-examination of K.F., but was soon met with an objection from the prosecutor on the ground that counsel was impermissibly asking leading questions.[9] A bench conference was held at which the prosecutor argued that K.F., in recanting her prior allegations and identifying with defendant, was an adverse witness pursuant to La. C.E. art. 611, and therefore, defense counsel could not cross-examine K.F. with leading questions, but could only conduct a direct examination of her with non-leading questions. The court agreed, sustained the State’s objection, and ordered defense counsel to ask non-leading questions.
*530 Defense counsel did not object to this ruling and continued with the examination of K.F. Thus, this issue has not been preserved for appellate review due to the failure of defendant to object to the ruling. See La.C.Cr.P. art. 841(A). Nevertheless, we will address the merits of this claim.
An accused is entitled to confront and cross-examine the witnesses against him. La. Const. Art. 1, § 16. La. C.E. art. 611(B) provides that a witness may bej^cross-examined on any matter relevant to any issue in the case, including credibility. The trial court has discretionary power to control the extent of the examination of witnesses, provided that the court does not deprive the defendant of his right to effective cross-examination. State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 479. Accordingly, the use of leading questions is largely within the discretion of the trial court, and only a clear abuse of discretion which prejudices the defendant’s rights will justify the reversal of a conviction. State v. Rodriguez, 02-334 (La.App. 5 Cir. 1/14/03), 839 So.2d 106, 129, urrit denied, 03-0482 (La.5/30/03), 845 So.2d 1061, cert, denied, 540 U.S. 972, 124 S.Ct. 444, 157 L.Ed.2d 321 (2003).
La. C.E. art. 611(C) provides:
Generally, leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony and in examining an expert witness on his opinions and inferences. However, when a party calls a hostile witness, a witness who is unable or unwilling to respond to proper questioning, an adversé party, or a witness identified with an adverse party, interrogation may be by leading questions. Generally, leading questions should be permitted on cross-examination. However, the court ordinarily shall prohibit counsel for a party from using leading questions when that party or a person identified with him is examined by his counsel, even when the party or a person identified with him has been called as a witness by another party and tendered for cross-examination.
In the instant case, since K.F. maintained defendant’s innocence, K.F., a witness called by the State, identified with an “adverse party,” namely, defendant. As such, pursuant to La. C.E. art. 611(C), the trial judge did not err in finding K.F. to be a “hostile witness.” Consequently, the trial court did not abuse its discretion in permitting the prosecutor to use leading questions during the direct examination of K.F., and in prohibiting the defense from using leading questions during the cross-examination of K.F.

124Improper introduction of recording of victim’s CAC interview

Lastly in this assignment of error, defendant argues that the trial court erred by allowing into evidence the recording of KF.’s CAC interview where the trial court failed to rule on the defense’s motion to prohibit the introduction of such interview.
On January 17, 2012, the defense filed a “Motion to Prohibit the State of Louisiana from Introducing Recorded Conversation into Evidence.” On January 18, 2012, the trial court issued an Order directing the State to show cause on January 19, 2012 why the defense’s motion should not be granted. A review of the record reveals neither a response by the State to the defense’s motion, nor a ruling by the court on the motion. At the time the State introduced the recording of K.F.’s CAC interview into evidence, the defense did not object.
[STATE]: At this time I’d offer, file and introduce into evidence State’s Exhibit *531 1 and 2.[10]
THE COURT: Any objection?
[DEFENSE]: No objection to 2 and no objection to 1, but that would be for record purposes only, I would believe.
[STATE]: There’s no objection to the number one being for record purposes only.
THE COURT: Very well. State Exhibits 1 and 2 are admitted. State # 1 is for record purposes only.
Further, at the time the State published the recording of K.F.’s CAC interview to the jury, the defense did not object.
12BThe explicit lack of objection to the statement indicates that the defense abandoned its motion to prohibit the introduction of this evidence. Thus, defendant is prohibited from raising this issue on appeal. See State v. Cooper, 05-2070 (La. App. 1 Cir. 5/5/06), 935 So.2d 194,197, writ denied, 06-1314 (La.11/22/06), 942 So.2d 554.
Thus, defendant’s first pro se assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. TWO

In defendant’s second pro se assignment of error, he also raises several arguments, which will be addressed in turn.

Improper admission of cellular phone photographs

First, defendant challenges the admissibility of the evidence, arguing that the photographs obtained from defendant’s cellular phone and introduced into evidence were inadmissible as the phone was seized without a warrant. This issue has not been preserved for appellate review as the defense did not raise it below, nor object to the introduction of the phone or its contents on this ground.[11] See Rule 1-3 of the Uniform Rules of the Courts of Appeal (“The Courts of Appeal will review only issues which were submitted to the trial court.... ”). Moreover, the evidence indicates that N.F. voluntarily turned the phone over to Detective Russ.

Improper failure to read charging documents into the record

Second, defendant argues that the trial court lacked subject matter jurisdiction because the court did not read into the record any charging documents, in violation of La.C.Cr.P. art. 765(2) and (3). However, no objection was raised regarding these omissions. Consequently, this issue has not been preserved for | gfiappellate review. See State v. Leslie, 244 La. 921, 155 So.2d 19, 20-21 (1963). Moreover, defendant has not shown how he was prejudiced by the trial court’s alleged violation of La.C.Cr.P. art. 765(2) and (3).

Invalid indictment for failure to include certain information

Third, defendant argues that the indictment was invalid because it does not include the name of the victim, and it does not establish that defendant was over the age of 17 at the time of the offenses, or that he was more than two years older than the victim at the time of the offenses.
La.C.Cr.P. art. 473 provides:
*532 When the name of the person injured is substantial and not merely descriptive, such as when the injury is to the person, as in murder, rape, or battery, the indictment shall state the true name of the victim or the name, appellation, or nickname by which he is known. If the name, appellation, or nickname of the victim is not known, it is sufficient to so state and to describe him as far as possible. In stating any name of a victim it is sufficient to state a surname, a surname and one or more given names, or a surname and one or more abbreviations or initials of a given name or names.
The indictment does not contain the name of the victim, instead providing “known juvenile (DOB 10/01/1996).” Despite the non-compliance with La.C.Cr.P. art. 473, this error was harmless since defendant was not prejudiced by surprise or lack of notice where the State provided ample discovery to the defense, including police reports and the victim’s medical records. See State v. Evans, 03-0752 (La. App. 5 Cir. 12/9/03), 864 So.2d 682, 697, writ denied, 04-0080 (La.5/7/04), 872 So.2d 1079 (finding failure to include rape victim’s name in indictment harmless error because the defendant was not prejudiced by surprise or lack'.of notice where the State had provided a copy of its entire file to him).
As far as the relative ages of defendant and the victim is concerned, the indictment includes both the victim’s and defendant’s dates of birth as October 1, 1996 and February 23, 1983, respectively. The victim alleged that the sexual [27abuse started when she was six years old, i.e., beginning on or after October 1, 2002. At that time, defendant was nineteen years old and was thus more than two years older than the victim.

Improper jury instructions

Fourth, defendant argues that the trial court erred in not instructing the jury as to the elements of the charged offenses. This argument is without merit as the record clearly indicates that the court provided the jury with instructions specifying the elements of the charged crimes, as well as the corresponding responsive verdicts.
Thus, defendant’s second pro se assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. THREE

Due process violation

In his third pro se assignment of error, defendant argues that La.C.Cr.P. art. 795(B)(2) violates Article I, § 17 of the Louisiana Constitution because he and his interpreter were precluded from participating in the side bar conference regarding the exercise of peremptory challenges.
The pertinent portion of Article 1 § 17 provides: “The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily.” La.C.Cr.P. art. 795(B)(2) provides:
Peremptory challenges of jurors shall be made and communicated to the court in a side bar conference of the judge, the attorneys conducting the examination and selection of jurors, and the defendant in a case in which the defendant chooses to represent himself. The conference shall be conducted in a manner that only the court, the attorneys, and the defendant in a case in which the defendant chooses to represent himself, are aware of the challenges made until the court announces the challenges without reference to any party or attorney in the case.
In the instant case, defendant was represented by counsel, who “acts in the role of an active advocate in behalf of his *533 client,” Anders v. State of Cal., 386 U.S. 1^738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), and who is presumed “competent to provide the guiding hand that the defendant needs.... ” United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984). As a result, since defendant’s counsel participated in the side bar on peremptory challenges, defendant’s constitutional right to a “full voir dire examination of prospective jurors and to challenge jurors peremptorily” was not violated.
Thus, defendant’s third pro se assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. FOUR

Excessive sentence as to Count 2

In his fourth pro se assignment of error, defendant argues that his two sentences of life imprisonment are unconstitutionally excessive. Defendant evidently relies on the minute entry of February 9, 2012, which provides that defendant received a life sentence on each of his two convictions. This is an error patent.[12] The transcript indicates that defendant received a life sentence on Count 1 and a ten-year sentence on Count 2. When there is a discrepancy between the transcript and a minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Thus, defendant did not receive two life sentences.
This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. FIVE

In what defendant entitles as his fifth pro se assignment of error, he repeats arguments raised in his prior pro se assignments, which we have found lack merit.

PRO SE ASSIGNMENT OF ERROR NO. SIX

Unconstitutionality of paragraph three of La.C.Cr.P. art 442

In his sixth pro se assignment of error, defendant argues that paragraph three of La.C.Cr.P. art. 442 is a violation of the separation of powers as provided in La. | MConst. Art. 2, § 2. He argues that the legislature’s enactment of the third paragraph of La.C.Cr.P. art. 442 is an impermissible encroachment on the judiciary because it renders powerless Louisiana courts to reverse a conviction from an indictment based on illegal evidence. The third paragraph of La.C.Cr.P. art. 442 provides:
A grand jury should receive only legal evidence and such as is given by witnesses produced, or furnished by documents and other physical evidence. However, no indictment shall be quashed or conviction reversed on the ground that the indictment was based, in whole or in part, on illegal evidence, or on the ground that the grand jury has violated a provision of this article.
La.C.Cr.P. art. 16 provides:. “Courts have the jurisdiction and powers over criminal proceedings that are conferred upon them by the constitution and statutes of this state, except as their statutory jurisdiction and powers are restricted, enlarged, or modified by the provisions of this Code.”
In view of this article, this assignment of error is without merit.

*534
ERRORS PATENT REVIEW

Defendant requests an errors patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a request.
First, defendant’s sentence on count two is illegally lenient. Defendant was convicted and sentenced pursuant to La. R.S. 14:81.2(D)(1)[13] since the indictment states that the criminal acts recurred “for a period lasting greater than one year.” At the time of the offense, La. R.S. 14:81.2(D)(1) provided, in pertinent part:
Whoever commits the crime of molestation of a juvenile when the incidents of molestation recur during a period of more than one year shall, on first conviction, be fined not more than ten thousand dollars or imprisoned, with or without hard labor, for not less than five nor lanmore than forty years, or both. At least five years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.
During sentencing, the trial court did not impose the mandatory sentencing restrictions. Usually such an omission is corrected as a matter of law by virtue of La. R.S. 15:301.1. See State v. Williams, 10-265 (La.App. 5 Cir. 11/9/10), 54 So.3d 98, 105-06. However, in this case, the restriction of benefits was within the trial court’s discretion, as the statute mandates that “at least five years of the sentence” be without benefits. (Emphasis added.) As a result, defendant’s sentence on Count 2 is hereby vacated and this matter is remanded to the trial court with instructions to impose sentence on Count 2 in accordance with La. R.S. 14:81.2(D)(1) as provided for at the time of the offense. See State v. Brown, 04-1194 (La.App. 5 Cir. 4/26/05), 902 So.2d 542, 550, writ denied, 05-1637 (La.2/3/06), 922 So.2d 1173.

CONCLUSION

For the foregoing reasons, defendant’s convictions are affirmed. His life sentence for aggravated rape is affirmed. His sentence for molestation of a juvenile is vacated and this matter is remanded for resen-tencing in accordance with La. R.S. 14:81.2(D)(1) as provided for at the time of the offense.

CONVICTIONS AFFIRMED; SENTENCE ON COUNT ONE AFFIRMED; SENTENCE ON COUNT TWO VACATED; REMANDED WITH INSTRUCTIONS

. In accordance with La. R.S. 46:1844(W)(1), to protect the identity of the victim, she and her mother will be referred to by their initials, K.F. and N.F., respectively.

. K.F.'s date of birth is October 1, 1996. Defendant's date of birth is February 23, 1983.

. The detective's report, including the relevant photographs obtained from the phone, was introduced into evidence.

. The recording of this interview was introduced into evidence and published to the jury.

. It is noted that the victim identified the brand of the condom as "Trojan.’’

. The State introduced into evidence a call log from the Jefferson Parish Correctional Center indicating the frequency and duration of phone calls between defendant and N.F.

. La. C.E. art. 801(D)(1)(a) provides that a statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is, in a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness' attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement.

. It is well settled that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520.

. "A leading question is one which suggests to the witness the answer he is to deliver.” State v. Jackson, 419 So.2d 425, 425 (La. 1981).

. State’s Exhibit 1 is a copy of Staci Lanza’s resume. State's Exhibit 2 is the recording of the CAC interview conducted on January 27, 2011.

. It is noted that on September 28, 2011, the defense filed a “Motion In Limine to Exclude Evidence of Photographs,” seeking to exclude the photographs obtained from defendant’s cellular phone on the ground that the photographs were inadmissible copies of the originals in violation of La. C.E. art. 1002. The court denied this motion on January 3, 2012.

. See Errors Patent Review, infra.

. It is well settled that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520. At the time of the charged offense, i.e., October 1, 2006 — January 6, 2009, this provision bore the designation La. R.S. 14:81.2(D)(1). It was subsequently amended by Acts 2011, No. 67, § 1 and now bears designation La. R.S. 14:81.2(0(1).